UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FERDARIUS S. SHINE,

       Petitioner,

                              Case No. 2:16-cv-12774

v.

                              HONORABLE STEPHEN J. MURPHY, III

JODI DEANGELO-KIPP,

       Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE
OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Ferdarius Shine is incarcerated in a Michigan prison and petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2254. Shine's imprisonment stems from convictions for three counts of first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a), two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and one count of possessing a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. Shine's sole ground for relief alleges that there was insufficient evidence at trial to overcome his insanity defense. There was conflicting expert testimony regarding Shine's alleged insanity, but the state appellate court ruled that the prosecution presented sufficient evidence to support Shine's convictions and to overcome his insanity defense. The appellate court's decision was not unreasonable and therefore, under the "doubly deferential" standard for reviewing habeas

claims challenging the sufficiency of the evidence, Shine's habeas petition must be denied.

## BACKGROUND

Shine's charges arose from multiple shootings at a home on Winthrop Street in Detroit, Michigan on February 15, 2013. The state court described the incident as follows:

> Defendant was present for a family gathering that evening at the home he shared with his grandmother and his seven-year-old daughter. Defendant went upstairs, and when he returned, he had a gun and opened fire on all six family members present in the home. He shot and killed his aunt and grandmother, and mortally wounded his daughter, who died in the hospital 33 days after the shooting. He beat his mother with his fists and chased his 16-year-old cousin down the street before she managed to find safety with neighbors.

*People v. Shine*, No. 321763, 2015 WL 5314879, at *1 (Mich. Ct. App., Sept. 10, 2015).

Shine was tried before a jury in Wayne County Circuit Court, where his defense was that he was legally insane at the time of the crimes. He did not testify at trial, but forensic psychologist Steven Miller testified on Shine's behalf. In Miller's opinion, Shine suffered from one or more mental disorders and was legally insane at the time of the crimes. But the prosecution's rebuttal witness, Dr. Donna Rinnas, reached the opposite conclusion. She testified that, in her opinion, Shine was neither mentally ill, nor legally insane.

The trial court instructed the jurors that they could find Shine not guilty, not guilty by reason of insanity, guilty as charged, or guilty, but mentally ill. On the first-degree murder charges, the jurors were given the additional option of finding Shine guilty of the lesser offense of second-degree murder. On April 7, 2014, the jury acquitted Shine of one

count of assault with intent to commit murder,[1] but found him guilty of the other two counts of assault with intent to commit murder, and likewise found him guilty of the three counts of first-degree murder and one count of felony-firearm.

The trial court sentenced Shine to mandatory life imprisonment without the possibility of parole for the murder convictions, concurrent terms of 225 months (eighteen years, nine months) to seventy-five years in prison for the two assault convictions, and a consecutive term of two years in prison for the felony-firearm conviction. The Michigan Court of Appeals affirmed Shine's convictions in an unpublished decision, *see Shine*, 2015 WL 5314879, and on March 29, 2016, the Michigan Supreme Court denied leave to appeal, *see People v. Shine*, 499 Mich. 882 (2016). On July 25, 2016, Shine filed his habeas corpus petition.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter adjudicated on the merits in State court to show that the relevant state court decision (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)) (quotation marks omitted). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

---

[1] The prosecutor conceded that the evidence did not support the count of assault with intent to murder Shine's mother. *See* 4/4/14 Trial Tr., pp. 56-57.

that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Consequently, AEDPA imposes a highly deferential standard that demands state-court decisions be given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## ANALYSIS

Shine alleges that his convictions violate due process of law and must be vacated because there was insufficient evidence to overcome his insanity defense. He claims that he proved the defense by a preponderance of the evidence and that the prosecution failed to rebut the defense. Accordingly, he seeks a judgment of not guilty by reason of insanity.

I.  <u>Clearly Established Supreme Court Precedent</u>

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Accordingly, the Court considers "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Ordinarily, this standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Here, however, Shine does not deny committing the crimes, and he has not alleged that the prosecution failed to prove the elements of the charged offenses. Rather, the question is whether the prosecution adequately rebutted Shine's defense of legal insanity.

The Supreme Court has said that allocating the burden of proving an affirmative defense to a defendant does not violate the Due Process Clause. *See Smith v. United States*, 568 U.S. 106, 110 (2013). Although the state may not shift the burden of proof to a defendant when the affirmative defense negates an element of the crime, the state need not overcome an affirmative defense beyond a reasonable doubt when the defense "excuses conduct that would otherwise be punishable, but does not controvert any of the elements of the offense itself[.]" *Id.* (alteration adopted and quotation marks omitted).

Here, Shine seeks to excuse conduct that would otherwise be punishable; specifically, by asserting that he was insane at the time he committed the offense. In Michigan, "sanity is not an element of substantive criminal charges," including first-degree murder, assault with intent to commit murder, and felony firearm. *Whitlow v. Palmer*, No. 1:17-cv-1010, 2018 WL 521458, at *3 (W.D. Mich. Jan. 23, 2018) (crimes generally); *People v. Mette*, 243 Mich. App. 318, 330 (2000) (first-degree murder); *Allen v. Redman*, 858 F.2d 1194, 1199 (6th Cir. 1988) (assault with intent to commit murder); Mich. Comp. Laws § 750.227b(1); *People v. Avant,* 235 Mich. App. 499, 505 (1999) (felony firearm). Because sanity is not an element of the crimes for which Shine was convicted, his claim fails to raise a federal constitutional issue and is therefore not cognizable on habeas review. *See Duffy v. Foltz*, 804 F.2d 50, 54 (6th Cir. 1986).

II. The Merits

Even if Shine's claim were cognizable here, the Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Cavazos*, 565 U.S. at 2).

The Michigan Court of Appeals concluded on review of Shine's claim that there was sufficient evidence at trial to overcome Shine's insanity defense and to support the jury's conclusion that Shine was sane during his commission of the crimes. The Court of Appeals pointed out that, in Michigan criminal law, "a person is presumed to be sane," *People v. Walker,* 142 Mich. App. 523, 525 (1985), and that a defendant has the burden of proving an insanity defense by a preponderance of the evidence, Mich. Comp. Laws § 768.21a(3).

Legal insanity requires "proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law.'" *People v. Carpenter*, 464 Mich. 223, 230–31 (2001) (quoting Mich. Comp. Laws § 768.21a(1)). Michigan law defined mental illness as "a substantial disorder of thought or mood that significantly

impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." Mich. Comp. Laws § 330.1400(g).

      A.      Testimony suggesting that Shine was insane

Shine's expert witness, forensic psychologist Steven Miller, interviewed Shine for competency to stand trial and for a criminal responsibility evaluation. He conducted two interviews with Shine and opined at trial that Shine had a mental disorder and was legally insane at the time of the crimes. Although Shine informed Miller that he did not remember everything that happened, Miller did not think Shine was malingering. In reaching his conclusions, Miller pointed out Shine's psychiatric history, which included hospitalizations for depression, bipolar disorder, and suicidal ideation at ages ten and twenty years old. For several years, Shine went untreated, but then he voluntarily returned to a treatment center for help.

At the hospital where Shine was taken after the shootings, he reported hearing voices. He also asked the police officers to shoot him, and he had delusional ideas that he was a rock star and was going to be rich and famous. The medical diagnosis for Shine upon his admission to the hospital was acute psychosis, and the discharge diagnosis was schizoaffective disorder, which Miller said was a type of schizophrenia. Medical staff at the hospital gave Shine Seroquel and Haldol, which are antipsychotic medications. The Seroquel dosage was tripled when Shine went to the Wayne County Jail. ECF 9-6, PgID 730–72 (4/3/14 Trial Tr., pp. 130–72); ECF 9-7, PgID 790–810 (4/4/14 Trial Tr., pp. 12–32).

Other witness testimony supported Dr. Miller's observations. For example, Shine's mother testified to Shine's psychiatric history, his abnormal confusion and inability to find

his way home from his daughter's school shortly before the shootings, and his state of mind at the time of the shootings. ECF 9-5, PgID 466–67, 486–90, 496–99, 511–19 (4/2/14 Trial Tr., pp. 33–34, 53–57, 63–66, 78–86). Shine's cousin testified that, as he was chasing her during the crime, he said that the devil made him do it. *Id.* at 579 (Trial Tr. p. 146). And Shine's friend testified that, after the shootings, Shine rode a bicycle to her home in pajama pants and a tee shirt, despite it being mid-February. ECF 9-6, PgID 616–17 (4/3/14 Trial Tr., pp. 16–17). She further testified that Shine was totally different from his usual self at the time, that his voice, attitude, and facial expression were unusual for him, and that he did not remember what he had done, although he said that he was a bad person and wanted to kill himself. *Id.* at 618–20.

### B. Testimony suggesting that Shine was not insane

The prosecution's expert witness was Dr. Donna Rinnas who was a consultant and forensic examiner at the Center for Forensic Psychiatry. She maintained that Shine was not legally insane, or even mentally ill, when he committed the charged offenses. The state court summarized her trial testimony as follows:

> Dr. Rinnas had an opportunity to meet with defendant on two separate occasions and review his medical records. While Dr. Rinnas acknowledged that defendant had a history of mental illness, she noted that it involved anxiety and depression, and that there was never any indication that those conditions, or anything else, had significantly impaired defendant's judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life. In fact, there was significant evidence that defendant was functioning normally up until the very moment he committed these crimes, including the fact that he had represented himself in a court proceeding earlier that day. Rinnas believed that defendant's actions of fleeing the scene, selectively remembering what he had done, carrying out a plan to visit a friend, and providing a false name at the hospital suggested that he not only appreciated the nature of his actions, but had been able to think clearly and cohesively at the time of the incident.

*Shine*, 2015 WL 5314879, at *2.

This summary of the evidence is supported by the record before the Court. *See* ECF 9-6, PgID 649–728 (4/3/14 Trial Tr., pp. 49–128), ECF 9-7, PgID 811–17 (4/4/14 Trial Tr., pp. 33–39). Dr. Rinnas conceded that Seroquel was an antipsychotic medication, but she said that Shine was given a low dosage and that it was used for non-psychotic reasons, that is, to treat agitation or serious anxiety. ECF 9-6, PgID 686 (4/3/14 Trial Tr., p. 86). Although Shine reported hearing voices at the hospital, Dr. Rinnas noted that he was able to provide relevant personal information about himself, *id.* at 90, and the medical staff was concerned or skeptical about the genuineness of his presentation given the nature of the situation and certain inconsistencies in his presentation. *Id.* at 691, 694.

Dr. Rinnas also stated that there were no readily apparent psychological symptoms when she saw Shine and that he was not functionally impacted by his symptoms according to his own account and treatment records. *Id.* at 661, 672. In fact, he had been "engage[d] in pretty full and normal daily [activities], taking care of his daughter, going to school, helping his grandmother, preparing meals for the family, sometimes [being a] DJ at parties at night, playing [on] the computer, going for walks, [and] spending time with his girlfriend." *Id.* at 672. According to Dr. Rinnas, "[t]hose kind of things [were] not consistent with someone who's . . . functionally, negatively, impacted by a significant mental illness." *Id.*

Continuing, Dr. Rinnas stated that there was nothing to indicate that Shine had been out of touch with reality earlier on the day of the shootings. *Id.* at 674. In fact, he indicated to her that it was a normal day and that he became agitated after he smoked marijuana and had a paranoid reaction to the drug. *Id.* at 673–74. Although Dr. Rinnas

acknowledged that high doses of marijuana can cause psychosis, she accurately pointed out that voluntary intoxication is not a basis for legal insanity. *Id.* at 707.[2] She also noted that, after the shootings, Shine fled the scene, rode a bicycle across town, and made several phone calls to people he knew. She claimed that these activities suggested an appreciation of the wrongfulness of his conduct, his resourcefulness, and his control of his behavior. *Id.* at 680–81.

Other witnesses corroborated aspects of Dr. Rinnas's testimony. Kelly Jones, for example, testified that, during the court proceeding on the morning of the shootings, Shine appeared to be normal and his usual self. ECF 9-4, PgID 400–01, 406–407 (4/1/14 Trial Tr., pp. 171–72, 177–78). Santangela Williams testified that Shine was cooking and talking with his relatives immediately before the shootings. ECF 9-5, PgID 559–67 (4/2/14 Trial Tr., pp. 126–34).

In sum, there were reasons to believe either expert. Although a reasonable juror could have accepted Shine's theory of insanity, there was sufficient evidence to support the prosecution's theory that Shine was sane. The state appellate court's finding that the evidence was sufficient to overcome Shine's insanity defense was therefore objectively reasonable. It certainly was not so lacking in justification that there was an error beyond

---

[2] *See* Mich. Comp. Laws § 768.21a(2) (stating that "[a]n individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances").

any possibility for fairminded disagreement. Accordingly, Shine's claim lacks merit, and the habeas petition must be denied.

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not disagree with the Court's assessment of Shine's claim, nor conclude that the issue deserves encouragement to proceed further. Shine is free to request a certificate of appealability from the Sixth Circuit.

**IT IS FURTHER ORDERED** that Shine may proceed on appeal *in forma pauperis* without further authorization because he was already granted leave to proceed *in forma pauperis* and an appeal could be taken in good faith. *See* Fed. R. App. P. 24(a)(3)(A).

**SO ORDERED.**


Dated: June 29, 2018            s/Stephen J. Murphy, III
                                         STEPHEN J. MURPHY, III
                                         United States District Judge


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 29, 2018, by electronic and/or ordinary mail.

                                         s/David P. Parker
                                         Case Manager